JENNIFER LEE TAYLOR (CA SBN 161368)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000

JAMES J. CEKOLA (CA SBN 259443)
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California  92130-2040
Telephone: 858.720.5100

Attorneys for Plaintiff
OPHTHONIX, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPHTHONIX, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> VMAX VISION, INC., a Delaware corporation, <br><br> Defendant. | Case No. **'12CV0686 WQHBGS** <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION UNDER FEDERAL LAW, UNFAIR BUSINESS PRACTICES UNDER STATE LAW, AND COMMON LAW TRADEMARK INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Ophthonix, Inc. ("Ophthonix") for its complaint against Defendant VMax Vision, Inc. ("VMax") alleges:

**NATURE OF THE ACTION**

1.　　This is an action for trademark infringement, false designation of origin and unfair competition under Federal law, unfair competition under State law, and common law trademark infringement, which Plaintiff Ophthonix brings to protect some of its most important assets, namely, the goodwill and recognition associated with its WOW® trademark.  Since at least 2007,

COMPLAINT     1

sd-583609

Ophthonix has used and extensively promoted the WOW® trademark in connection with optometry services and eyewear. As described more fully below, without Ophthonix's authorization or consent, and with knowledge of Ophthonix's prior rights in the WOW® trademark, Defendant commenced using and continues to use WOW® as a trademark in connection with eyewear products in direct competition with Ophthonix. Through its conduct, Defendant has created circumstances whereby members of the public and of the relevant trade are likely to believe incorrectly that Defendant's products are authorized by, sponsored by, or affiliated with Ophthonix. Ophthonix accordingly brings this action in order to protect its valuable trademarks, to rectify the harm that it has suffered as a result of Defendant's misconduct, and to halt the additional harm Ophthonix will incur if Defendant is not enjoined from further misconduct.

**PARTIES**

2. Ophthonix is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1491 Poinsettia Avenue, Vista, California, 92081.

3. On information and belief, VMax is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 6307 Little Lake Sawyer Drive, Windermere, Florida, 34786.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any act of Congress relating to trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

5. Venue is proper in this judicial district pursuant to at least 28 U.S.C. § 1391(b)(1) because Defendant is deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(c) (corporation resides for venue purposes in any judicial district in which it is subject to personal jurisdiction).

6. Defendant is subject to personal jurisdiction within this judicial district because Defendant has engaged in substantial, continuous and systematic activity within this judicial district, and because Defendant has purposefully directed its activities towards residents in this judicial district.

7. On information and belief, Defendant sells and advertises eye care related products and services in this judicial district, and derives revenue from activity within this judicial district. Also, Defendant's unlawful conduct complained of herein causes injury in this judicial district.

8. On information and belief, Defendant has advertised its eye care products and services specifically to residents in this judicial district including by utilizing testimonials from eye care professionals identified in Defendant's advertisements as working in this judicial district such as David Geffen, O.D. of San Diego, California.

9. On information and belief, Defendant has been an exhibitor at trade shows within California including at least the C & E Vision Symposium in Anaheim, California on January 12, 2012. On information and belief, the C & E Vision Symposium included participant residents of this judicial district.

10. On information and belief, Defendant owns, maintains and/or operates a company website available at http://www.vmaxvision.com/testimonials.html, a company Facebook page available at http://www.facebook.com/#!/VmaxVision, a Facebook page for its product "PSF Refractor by VMax Vision" available at http://www.facebook.com/#!/pages/PSF-Refractor-by-Vmax-Vision/184428268271083, and a Facebook page for its product "Encepsion Lenses by VMax Vision" available at http://www.facebook.com/#!/pages/Encepsion-Lenses-by-Vmax-Vision/213252415370049. Defendant advertises its products and services through its website and Facebook pages which are all accessible to residents in this judicial district. Defendant's website and Facebook pages are interactive. Defendant's website invites Doctors of Optometry, Doctors of Medicine, and Industry Representatives wishing "to be on [Defendant's] high priority list for a personal response and a fast track to a demo" to fill out a request form. *See* http://www.vmaxvision.com/request_info.html. Defendant's website also allows anyone interested in "general product information" to fill out a request form. *Id*.

11. As of the date of filing this Complaint, Defendant's company Facebook page includes a total of three "Likes" of other sites, meaning that these three sites are linked and connected with Defendant's Facebook page. One of the only three "Likes" on Defendant's company Facebook page is for "Encinitas Optometry" which, on information and belief, is an optometry practice located in Encinitas, California through which Defendant maintains contacts with residents in this judicial district. *See* http://www.facebook.com/#!/VmaxVision.

## GENERAL ALLEGATIONS

### Ophthonix's Business and its WOW® Mark

1. Founded in December 2000, Ophthonix develops and makes vision correction technology, specifically, aberrometers and eyeglass lenses. Ophthonix introduced the first ever wavefront-guided vision correction solution that addresses the unique variations in each person's eyes caused by higher order aberrations, allowing for the creation of highly customized eyeglass lenses.

2. As a result of advancements made by Ophthonix, individuals who wear prescription eyeglasses are able to see more clearly, sharply and vividly than ever before. The technological advancements made by Ophthonix have been well recognized. In 2004, Ophthonix won the prestigious "Most Innovative New Product" award for life sciences by CONNECT, University of California San Diego. In 2005, Ophthonix's Z-View® Aberrometer was honored with the coveted 2005 Medical Design Excellence Award (MDEA) in the medical device community's premier awards program.

3. The Ophthonix technology is a comprehensive vision correction system—from examining the eye, to providing a complete vision correction prescription, to manufacturing a custom lens. First, an optometrist uses Ophthonix's clinically proven Z-VIEW® aberrometer, a machine used to measure a patient's vision. Ophthonix's Z-VIEW® aberrometer provides a particularly precise and individualized prescription for each patient based on all 2nd to 6th order aberrations of the eye, which make up the iPRINT®, similar to an "ocular fingerprint." The optometrist transmits a specialized prescription based on the iPRINT® directly to Ophthonix, which manufactures customized IZON® lenses and inserts them into eyeglass frames previously

1  selected by the patient.  Ophthonix ships the customized eyeglasses back to the optometrist for a
2  final fitting with the patient.

3   4. Because of the particularly precise prescription obtained with the Z-VIEW®
4  aberrometer, the IZON® lenses correct microscopic irregularities or aberrations that are unique to
5  each eye.  Such aberrations may distort light as it passes through the cornea to the retina and can
6  have a significant impact on the quality of vision—affecting things like depth perception,
7  crispness, contrast, color perception and nighttime vision.

8   5. To distinguish the extraordinary results that are achieved with Ophthonix's
9  products and services, Ophthonix has developed a unique branding campaign.  Ophthonix has
10 been making prominent use of WOW® as a trademark since at least as early as November 30,
11 2007.  WOW® is a central part of nearly all of Ophthonix's advertisements.  For example,
12 Ophthonix operates a consumer website at www.izonlens.com that displays a banner with the
13 headings "What is WOW vision?", "How WOW Works," "Why WOW," and "How to get
14 WOWed":



20   6. In Ophthonix's advertisements, and also in practitioner endorsements featured in
21 Ophthonix's promotional materials, the WOW® trademark is often used as a part of the phrase
22 "WOW factor," or "get the WOW."

23   7. Ophthonix has used the WOW® trademark in television and print advertising, as
24 well as in online banner advertising.

25   8. Additionally, Ophthonix distributes an offline brochure that uses the WOW®
26 trademark as a central piece of its branding.

27   9. In contrast to traditional eyeglass lens manufacturers, Ophthonix has developed a
28 strong branding campaign directed to the public to educate them about the advantages of its

COMPLAINT                                5
sd-583609

1  IZON® lenses.  To highlight the better color perception available with the IZON® lenses,
2  Ophthonix uses vibrant colors in its advertisements.  These advertisements are built around the
3  concept of comparing ordinary vision with the "WOW" that can be attained with IZON® lenses.
4  An example of one such advertisement is shown below:



16       10.   In addition to Ophthonix's own advertisements, optometrists who use Z-VIEW®
17  aberrometers and who order customized IZON® lenses directly from Ophthonix are licensed to
18  use the WOW® trademark in their own advertisements to promote their services and Ophthonix's
19  products.  Prescribing practitioners also invite their patients to submit testimonials about their
20  WOW® moments.

21       11.   Ophthonix owns U.S. Trademark Registration No. 3,858,700 for the WOW®
22  trademark for use in connection with optometry services, which issued on October 12, 2010, on
23  the principal register of the United States Patent and Trademark Office.  A true copy of this
24  registration is attached to this Complaint as Exhibit A.

25       12.   Ophthonix owns U.S. Trademark Registration No, 4,057,199 for the WOW® mark
26  for use in connection with eyewear products, which issued on November 15, 2011, on the
27  principal register of the United States Patent and Trademark Office.  A true copy of this
28  registration is attached to this Complaint as Exhibit B.

13. Ophthonix has invested substantial time, effort and resources into promoting its products and services with the WOW® trademark. As a result of Ophthonix's extensive promotional activities, the WOW® trademark is recognized by the public and members of the relevant trade as identifying and distinguishing Ophthonix and its products. Moreover, when consumers and eye care practitioners see advertisements for eyeglass lenses or optometric services that use the WOW® trademark, they identify the products solely with Ophthonix. There can be no question that practitioners and consumers have come to associate the WOW® trademark solely with Ophthonix and its products, or that Ophthonix is the owner of this trademark.

**VMax's Business and Wrongful Conduct**

14. Defendant VMax offers prescription eyewear products and services that compete directly with Ophthonix's products and services. In fact, Defendant's founder and CEO, Shui Lai, Ph.D., is a co-founder and previous officer of Ophthonix.

15. Both companies offer highly customized lenses and cutting edge techniques to improve a patient's visual acuity.

16. Both companies market their products through identical channels of trade and to the same consumers, namely, eye care professionals (*e.g.* optometrists, ophthalmologists, opticians, and optical technicians) and eye care patients. For example, both companies were exhibitors at the International Expo West conference in Las Vegas in September 2011. Both companies are scheduled exhibitors at the International Visions Expo East conference in New York, NY, March 2012.

17. After Ophthonix had already been using the WOW® trademark in connection with its eyewear products and services, Defendant began distributing advertising materials for Defendant's directly competing products and services that, without authorization from Ophthonix, feature "wow" as a marketing component.

18. For example, a copy of one of Defendant's advertising brochures is attached to this Complaint as Exhibit C. This brochure is distributed at least via online (website) distribution.

COMPLAINT 7
sd-583609

19. Page 5 of Defendant's brochure states that optometrists can "add the '**wow**' factor to [their] practice" through Defendant's lenses and eye care technology. (Ex. C at 5 (emphasis added).)

20. Page 5 of Defendant's brochure also states: "The '**wow**' factor will boost your word of mouth marketing." (Ex. C at 5 (emphasis added).)

21. Defendant has thus chosen to take from Ophthonix, a company founded by Defendant's founder and CEO, a key marketing element that Defendant knows Ophthonix has priority and ownership over. Like Ophthonix's marketing materials, Defendant's materials use WOW as a trademark and in a non-descriptive fashion. Defendant's advertisements urge practitioners to "add the '**wow**' factor" to their practice and state that "[t]he '**wow**' factor will boost word of mouth marketing" (emphases added). Consumers and eye care professionals who have memory of Ophthonix's marketing materials, which focus on "WOW," and the "WOW factor," are highly likely to be confused and assume that Defendant's products come from the same source or are otherwise affiliated with Ophthonix and Ophthonix's products.

22. On information and belief, Defendant's unlawful and infringing conduct is unjustly enriching Defendant at the expense of Ophthonix, as consumers and eye care professionals seeking Ophthonix's products are misled to Defendant through Defendant's confusing advertising.

23. Ophthonix has repeatedly contacted Defendant by letter to address the conduct complained of herein and attempted to reach an amicable resolution to this dispute. However, Defendant has refused to comply with Ophthonix's demand that it stop its unlawful conduct. Ophthonix continues to see advertisements in which Defendant uses the WOW designation to advertise Defendant's products.

COMPLAINT                                                8
sd-583609

# FIRST CLAIM FOR RELIEF

## FEDERAL TRADEMARK INFRINGEMENT OF REGISTERED MARKS

### (Section 32 of Lanham Act, 15 U.S.C. § 1114(1))

24. Ophthonix re-alleges and incorporates herein Paragraphs 1 through 23 of this Complaint.

25. Ophthonix owns two federal trademark registrations (Nos. 4,057,199 and 3,858,700) for the WOW® mark in connection with optometry services and eye wear products.

26. Defendant's utilization of the WOW designation in connection with its optometry services and eye wear products has infringed Ophthonix's registered trademarks.

27. Defendant's infringing activity is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Ophthonix with Defendant, or as to the origin, sponsorship, or approval by Ophthonix of Defendant's goods, services or commercial activities.

28. Defendant's infringing activity enables Defendant to benefit unfairly from Ophthonix's reputation and success, thereby giving Defendant's infringing products sales and commercial value they would not have otherwise.

29. Prior to Defendant's first infringement, Defendant was aware of Ophthonix's business and had either actual notice and knowledge, or constructive notice of Ophthonix's registered trademarks.

30. Defendant's unauthorized use of the WOW designation is likely to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship or approval of the Defendant's products and services and/or to cause confusion or mistake as to any affiliation, connection or association between Ophthonix and Defendant, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a).

31. On information and belief, Defendant's infringement of Ophthonix's registered trademarks as described herein has been and continues to be intentional, willful and without regard to Ophthonix's rights.

32. On information and belief, Defendant has gained profits by virtue of its infringement of Ophthonix's registered trademarks.

33. Ophthonix also has sustained damages as a direct and proximate result of Defendant's infringement of Ophthonix's registered trademarks in an amount to be proven at trial.

34. Ophthonix will suffer and is suffering irreparable harm from Defendant's infringement of Ophthonix's registered trademarks insofar as Ophthonix's invaluable good will is being eroded by Defendant's continuing infringement. Ophthonix has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and good will flowing from the Defendant's infringing activities. Pursuant to 15 U.S.C. § 1116, Ophthonix is entitled to an injunction against Defendant's continuing infringement of Ophthonix's registered trademarks. Unless enjoined, Defendant will continue its infringing conduct.

35. Because Defendant's actions have been committed with intent to damage Ophthonix and to confuse and deceive the public, Ophthonix is entitled to Defendant's profits, treble Ophthonix's actual damages or Defendant's profits, whichever is greater, and to, an award of costs.

## SECOND CLAIM FOR RELIEF

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a))

36. Ophthonix re-alleges and incorporates herein Paragraphs 1 through 35 of this Complaint.

37. Ophthonix has rights in the WOW® trademark. These rights predate Defendant's use of the WOW designation.

38. Defendant's use of the WOW designation in connection with products and services competing with Ophthonix's products and services is likely to cause confusion as to the origin of Defendant's competing products and services, and is likely to cause consumers and eye care professionals to believe that there is a relationship between Defendant and Ophthonix.

39. Defendant's actions complained of herein are likely to cause confusion, mistake, or deception among consumers and eye care professionals as to an affiliation, connection, or association of Defendant and its products and services with Ophthonix, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

40. Defendant's unauthorized conduct has deprived and will continue to deprive Ophthonix of the ability to control the perception of eye care professionals and consumers of its products marketed under the WOW® trademark, placing the valuable reputation and goodwill of Ophthonix in the hands of Defendant, over whom Ophthonix has no control.

41. Because Defendant has refused to cease its infringing conduct despite repeated requests by Ophthonix, Defendant has acted willfully.

42. As a result of Defendant's conduct, Ophthonix has suffered substantial damage and irreparable harm to its WOW® trademark, constituting an injury for which Ophthonix has no adequate remedy at law. Unless this Court enjoins Defendant's conduct, Ophthonix will continue to suffer irreparable harm.

43. On information and belief, Defendant's infringement of Ophthonix's trademarks as described herein has been and continues to be intentional, willful and without regard to Ophthonix's rights.

44. On information and belief, Defendant has gained profits by virtue of its infringement of Ophthonix's trademarks.

45. Ophthonix also has sustained damages as a direct and proximate result of Defendant's infringement of Ophthonix's trademarks in an amount to be proven at trial.

46. Because Defendant's actions have been committed with intent to damage Ophthonix and to confuse and deceive the public, Ophthonix is entitled to Defendant's profits, treble Ophthonix's actual damages or Defendant's profits, whichever is greater, and to, an award of costs.

# THIRD CLAIM FOR RELIEF

## STATE UNFAIR COMPETITION
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

47. Ophthonix re-alleges and incorporates herein Paragraphs 1 through 46 of this Complaint.

48. Ophthonix has rights in the WOW® trademark. These rights predate Defendant's use of the WOW designation.

49. Defendant's use of the WOW designation in connection with competing services and products is likely to cause confusion as to the origin of Defendant's competing services and products and is likely to cause consumers and eye care professionals to believe that there is a relationship between Defendant and Ophthonix.

50. The above-described acts and practices by Defendant are likely to mislead or deceive the general public and eye care professionals and therefore constitute fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq*.

51. The above-described acts further constitute acts that violate Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unlawful acts in violation of California Business & Professions Code §§ 17200, *et seq*.

52. The unlawful and fraudulent business practices of Defendant described above present a continuing threat to and are meant to deceive members of the public in that Defendant continues to promote its products and services by wrongfully trading on the goodwill of Ophthonix's WOW® trademark.

53. As a direct and proximate result of these acts, Defendant has profited and will continue to profit from the strength of Ophthonix's WOW® trademark.

54. As a direct and proximate result of Defendant's wrongful conduct, Ophthonix has been injured in fact and has lost money and profits, and such harm will continue unless Defendant's acts are enjoined by the Court. Ophthonix has no adequate remedy at law for Defendant's continuing violation of Ophthonix's rights.

55. Because Defendant has refused to cease its conduct despite repeated requests by Ophthonix, Defendant has acted willfully.

56. Defendant should be required to restore to Ophthonix any and all profits earned as a result of its unlawful and fraudulent actions, or provide Ophthonix with any other restitutionary relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

## COMMON LAW TRADEMARK INFRINGEMENT

57. Ophthonix re-alleges and incorporates herein Paragraphs 1 through 56 of this Complaint.

58. Ophthonix has rights in the WOW® trademark. These rights predate Defendant's use of the WOW designation.

59. Defendant's use of the WOW designation in connection with competing services and products is likely to cause confusion as to the origin of Defendant's competing services and products, is likely to cause consumers and eye care professionals to believe that there is a relationship between Defendant and Ophthonix, and constitutes common law trademark infringement.

60. Defendant's unauthorized conduct has deprived and will continue to deprive Ophthonix of the ability to control the perception of eye care professionals and consumers of its products and services marketed under the WOW® trademark, placing the valuable reputation and goodwill of Ophthonix in the hands of Defendant, over whom Ophthonix has no control.

61. Because Defendant has refused to cease its infringing conduct despite repeated requests by Ophthonix, Defendant has acted willfully.

62. As a direct and proximate result of these acts, Defendant has profited and will continue to profit from the strength of Ophthonix's WOW® trademark.

63. As a result of Defendant's conduct, Ophthonix has suffered substantial damage and irreparable harm to its WOW® trademark, constituting an injury for which Ophthonix has no adequate remedy at law. Unless this Court enjoins Defendant's conduct, Ophthonix will continue to suffer irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Ophthonix requests that this Court enter a judgment and declaration in favor of Ophthonix and against Defendant as follows:

i) Preliminarily and permanently enjoining and restraining Defendant, all entities under its control, as well as any associated subsidiaries, licensees, owners, directors, officers, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents, and any other persons or entities acting on behalf of Defendant, in concert with Defendant, or with Defendant's authority, from:

(1) using, selling, offering for sale, holding for sale, advertising or promoting eyewear products or services under or in connection with any trade name, trademark, service mark, Internet domain name or other designation of origin that is comprised in whole or in part of the WOW® designation, or any terms, designations, designs, or styles confusingly similar thereto; or

(2) doing any act or thing that is likely to induce the belief that Defendant and/or Defendant's products are in some way connected with Ophthonix and/or its business, or that is likely to injure or damage Ophthonix or its WOW® trademark; and

ii) Ordering Defendant to:

(1) pay Ophthonix the compensatory damages sustained by Ophthonix as a result of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts alleged herein;

(2) pay Ophthonix punitive damages as a consequence of the willful and wanton acts alleged herein;

(3) account for and pay over to Ophthonix all gains, profits and advantages derived by it from the unlawful acts alleged herein;

(4) deliver up for destruction all materials that bear the infringing WOW® designation, including without limitation all letterhead, signage, brochures, labels, stickers, trade show displays and materials, written materials and other

1   promotional materials;

2   (5) reimburse Ophthonix for the costs it has incurred in bringing this action, together with its reasonable attorneys' fees and disbursements;

4   (6) pay Ophthonix's costs of corrective advertising; and

5   iii)   Awarding such other and further relief as this Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: March 20, 2012

MORRISON & FOERSTER LLP

By: _____
JENNIFER LEE TAYLOR
JTaylor@mofo.com

Attorneys for Plaintiff
OPHTHONIX, INC.

COMPLAINT                                   15
sd-583609